UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**S.P.,**

    *Plaintiff*,

**v.**                                                     Case No. SA-21-CV-0388-JKP-RBF

**NORTHEAST INDEPENDENT
SCHOOL DISTRICT,**

    *Defendant*.

### MEMORANDUM OPINION AND ORDER

Before the Court is a *Motion to Dismiss* (ECF No. 6) filed by Defendant Northeast Independent School District ("NEISD"). Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant seeks to dismiss Plaintiff's claims. With the filing of Plaintiff's response (ECF No. 7) and Defendant's reply brief (ECF No. 8), the motion is ripe and ready for ruling. After considering the motion, other briefing, pleadings, and applicable law, the Court grants the motion for the reasons stated herein.

### I. BACKGROUND[1]

In April 2021, Plaintiff S.P. commenced this action based upon a sexual assault perpetrated against her by a former teacher. *Pl.'s Orig. Compl. [hereinafter Compl.]* ¶ 1. While she was an "eighth grader at Nimitz Middle School in NEISD . . . her 37-year-old teacher, Rey Trevino, meticulously preyed on and groomed her to satisfy his sexual needs." *Id.* ¶ 1.

> Trevino began the grooming process by inviting S.P. and a few of her friends to eat lunch with him in his classroom away from other students. Trevino portrayed himself as the cool teacher whom the students could trust and confide in. Trevino then isolated S.P. by inviting her to be alone with him in his classroom during lunch and after school. Once Trevino had S.P. alone, he started flirting with her by, among other things, telling her she was pretty.

---

[1] The background is taken from Plaintiff's allegations, which the Court views in a light most favorable to Plaintiff consistent with the standards for motions to dismiss.

*Id*. Although she turned eighteen in January of this year, the events leading to this litigation began when she was fourteen. *See id*. & n.1. She asserts two claims: (1) discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), and (2) violation of substantive due process under 42 U.S.C. § 1983. *See id*. ¶¶ 21-42.

Defendant has moved to dismiss both claims. *See Mot*. at 3-9. In response, Plaintiff asserts that she has adequately pled a Title IX violation and thus requests denial of the motion. *Resp*. at 1, 3-8. In the alternative, she asks for leave to amend her complaint with additional factual allegations. *See id*. at 9-10. Although she requests that the motion be denied in its entirety, she does not address Defendant's reasons for dismissing her due process claim. *See*, *generally*, *id*. In reply, Defendant argues that Plaintiff has abandoned the due process claim by failing to address it. *Reply* at 8-9. The motion is ripe for ruling.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant seeks dismissal of Plaintiff's claims based on insufficient factual allegations. Under Rule 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). Additionally, courts may take judicial notice of matters of public record. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir.

2007).² Furthermore, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009). Despite the natural focus on the allegations of the operative pleading, the party moving for dismissal under Rule 12(b)(6) "carries the burden of proof for dismissal." *Newton v. Bank of Am., N.A.*, No. CV SA-19-CA-797-FB, 2019 WL 6048000, at *2 (W.D. Tex. Aug. 29, 2019).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from

---

² Plaintiff cites to administrative reports and contends that the Court may consider the reports as matters of public record. *See Resp.* at 7-8 & nn.3-4. Defendant raises no objection to considering the reports and argues that they do not cure Plaintiff's pleading deficiencies. *Reply* at 5. Because the Court may take judicial notice of the public reports, s*ee Gulf Restoration Network v. Bernhardt*, 456 F. Supp. 3d 81, 92 (D.D.C. 2020), it has considered them.

3

conceivable to plausible." 550 U.S. at 570. The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

### III. DUE PROCESS

Although Plaintiff asserts a due process claim in her original complaint, she has abandoned that claim by failing to defend it in response to the motion to dismiss. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding that plaintiff abandoned claim when she failed to defend in response to motion to dismiss); *Weaver v. Basic Energy Servs., L.P.*, MO-13-CV-022, 2014 WL 12513180, at *2 (W.D. Tex. Jan. 8, 2014), *aff'd*, 578 F. App'x 449 (5th Cir. 2014). The Court finds that Plaintiff has abandoned her due process claim and thus dismisses it.

### IV. TITLE IX

Unless excepted under its provisions, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). Relying on the "text of Title IX, which, subject to a list of narrow exceptions not at issue here, broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex,'" the Supreme Court has held that there is a private cause of action for damages for Title IX violations. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). While Title IX expressly mentions discrimination, sexual harassment and abuse are likewise proscribed. *See Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75 (1992). The Court may use the terms discrimination, harassment, and abuse interchangeably or jointly, but they all exhibit conduct that violates Title IX.

The Supreme Court has "consistently interpreted Title IX's private cause of action broadly to encompass diverse forms of intentional sex discrimination." *Jackson*, 544 U.S. at 183. Never-

theless, "a recipient of federal funds may be liable in damages under Title IX only for its own misconduct." *Davis ex rel. Lashonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640 (1999). Liability does not extend to misconduct of third parties. *See id*. at 641. And a Title IX "action will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id*. at 633.

Further, although the Supreme Court has recognized an implied right of action under Title IX for teacher-on-student sexual harassment, "damages may not be recovered in those circumstances unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998). In short, "Title IX requires actual notice to an 'appropriate person' and 'an opportunity for voluntary compliance.'" *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020) (citations omitted). And deliberate indifference is a "high bar" where "neither negligence nor mere unreasonableness" suffices. *Id*. at 356 (citations omitted).

Stated succinctly, following *Gebser*, "plaintiffs seeking damages for a teacher's sexual harassment of a student must show that (1) an employee of a federal funding recipient with supervisory power over the alleged harasser (2) had actual knowledge of the harassment and (3) responded with deliberate indifference." *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 984-85 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015). Similarly, in a related context, the Fifth Circuit has held:

> A school district that receives federal funds may be liable for student-on-student harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit," and (5) the district was deliberately indifferent to the harassment.

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (quoting *Davis*, 526 U.S. at 650). In the teacher-on-student context, it is unnecessary to explicitly state the second *Sanches* element, because it is inherent in the teacher's employment. And the fourth *Sanches* element is inherent in Title IX itself rather than anything stated in *Gebser*. Accordingly, the Court views the pertinent elements for teacher-on-student harassment as essentially the same as student-on-student harassment. Of course, at the motion to dismiss stage, the focus is on whether the plaintiff has made sufficient factual allegations to satisfy each element.

Plaintiff sufficiently alleges that the school district receives federal funding. *Compl.* ¶¶ 7, 23. Furthermore, no one disputes that Plaintiff has identified a proper supervisory employee of the school district or that Trevino was under district control. And Plaintiff specifically alleges that "Jennifer Jensen, the Assistant Director (and now Director) of STEM and Trevino's direct supervisor [had] the authority to control [Trevino's] employment." *Id.* ¶ 15. There also appears to be no issue that the harassment was based on the victim's sex.

For purposes of resolving the instant motion, the central issue on Plaintiff's Title IX claim relates to her allegations regarding the actual knowledge of Defendant. The "knowledge requirement cannot be satisfied by showing that the school district should have known there was a substantial risk of abuse. It requires the plaintiff to establish that the "district actually knew that there was a substantial risk that sexual abuse would occur." *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 775 (5th Cir. 2020) (per curiam) (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 652-53 (5th Cir. 1997)). Although *M.E.* dealt with summary judgment, *see* 840 F. App'x at 774, and *Rosa H.* addressed a motion for judgment as a matter of law following a jury trial, *see* 106 F.3d at 652, they still support the intertwined concepts that "should have known" is not enough and that actual knowledge is required to impose liability.

Pertinent to the knowledge issue, Plaintiff alleges that "[o]n several occasions," Jensen "observed Trevino alone with [her] in his classroom." *Compl.* ¶ 2. Plaintiff further alleges that Jensen once "walked in on [them] when they were alone in his classroom with the door closed." *Id.* She further alleges that Jensen "observed [the two] spending time together alone in his classroom with the door closed" and "[a]nother teacher . . . also observed Trevino and S.P. spend extensive time alone in classroom." *Id.* ¶ 15. In response to Trevino's behavior, the school district allegedly made or implemented a new rule or policy that students could not eat lunch in classrooms. *Id.* ¶¶ 2, 15.

Although Plaintiff alleges that Trevino was engaging in grooming behavior, *see id.* ¶¶ 3, 11-14, his behavior did not escalate to physical contact until "the last day of school in 2017," when "Trevino invited S.P. to his classroom to say goodbye" and upon her arrival "he kissed and made out with her for approximately five minutes." *Id.* ¶ 17. That evening, "Trevino texted S.P." and the next night, he went to "S.P.'s apartment." *Id.* He "encouraged S.P. to sneak out of her apartment about three times per week all summer and continuing into S.P.'s ninth grade fall at another NEISD campus." *Id.* When she would sneak "out of her house to be with Trevino, he would engage in sexual acts with [her]." *Id.* ¶ 18. More particularly, he "penetrated S.P.'s vagina with his fingers on approximately four occasions" and "also had S.P. touch his penis." *Id.*

After her parents grounded her for sneaking out of the apartment in October 2017, Trevino called her "twenty-eight times in one night." *Id.* ¶ 19. And when Plaintiff "blocked his number, he tried to enter her room by her window. " *Id.* In December 2017, after "Trevino made an inappropriate sexual joke in class about his wife, and a student and parent complained," the school district suspended him, and he later resigned or was terminated. *Id.* ¶ 20.

With respect to her Title IX discrimination claim, Plaintiff alleges that the school district,

"its school board, principal, Jennifer Jensen, and other staff and faculty possessed actual notice that it could be liable under Title IX for teacher-on-student sexual harassment, sexual grooming, sexual discrimination, and/or sexual abuse." *Id*. ¶ 24. She further alleges that, "[u]pon information and belief," the school district "had actual notice of Trevino's sexual harassment, sexual grooming and/or sexual abuse of minor students and failed to take appropriate corrective action, thereby acting with deliberate indifference." *Id*. ¶ 27. She also alleges that the school district "had actual knowledge of abuse and w[as] deliberately indifferent to the abuse and the safety of minor students at Nimitz Middle School, including but not limited to Plaintiff." *Id*. ¶ 29.

The allegations in the above paragraph are conclusory in many respects. Plaintiff provides absolutely no facts to support finding the school board or principal had actual notice of the alleged sexual harassment and abuse or grooming. Of course, what someone may or may not know is often peculiarly within the control of that person or party.

As the Fifth Circuit has recognized, the plausibility standard set out in *Twombly* and *Iqbal* "applies to all civil actions" and "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (omitting internal quotation marks and quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted)). But recognizing that plaintiffs may not be privy to all relevant facts does not provide a license to engage in a fishing expedition for missing facts. *See id*. Plaintiffs "must offer sufficient factual allegations to show that [they are] not merely engaged in a fishing expedition." *Id*. (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)). Courts, nevertheless, must also consider plaintiffs' "limited access

to crucial information." *Id*. (same).

While *Innova* did not involve Title IX or sexual discrimination, the Supreme Court has long accepted that, "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult" to define the contours of alleged discrimination, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (Title VII case). It thus cautioned against transposing "a flexible evidentiary standard," such as the prima facie case in discrimination cases, into "a rigid pleading standard." *Id*. And the Fifth Circuit has also found Title VII law helpful to some extent in the Title IX arena. *See Rosa H.*, 106 F.3d at 660. In the Title VII retaliation context, the Fifth Circuit has held that, "[a]t the pleading stage," the plaintiff is merely "required to allege facts permitting at least an inference of her employer's knowledge." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 434 (5th Cir. 2021).

Plaintiff urges the Court to apply these principles to this case. *Resp*. at 6 & n.2. Although Defendant objects to their applicability and argues that Title VII cases, and particularly *Wright*, are distinguishable, *see Reply* at 4-5 & n.2, the Court finds the principles not bound to the specific contexts of the cited cases.[3] Reasonable inferences from alleged facts are permitted as a part of the standard for considering motions filed under Fed. R. Civ. P. 12(b)(6). Alleging enough facts to state a plausible claim of discrimination or harassment "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" sufficient to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Consistent with *Twombly*, Plaintiff must allege enough facts to raise a reasonable expectation that discovery will reveal evidence of actual knowledge.

But before the Court confronts any potential need for discovery, it first addresses other

---

[3] But what facts may permit a reasonable inference in one case or type of case may not permit a similar reasonable inference in a different case or type of case. As Defendant points out, *Wright* dealt with an inference regarding retaliation following closely timed protected conduct. *See Reply* at 4 (citing *Wright*, 990 F.3d at 434).

pertinent matters. The parties quarrel with the meaning of the term, "misconduct," as used in *Gebser*. But in the context of teacher-on-student sexual harassment at issue in *Gebser*, the misconduct is clearly the harassment, discrimination, or abuse itself. In *Gebser*, the Supreme Court found actual notice lacking when the appropriate person at the school district had insufficient knowledge to alert that person that the teacher "was involved in a sexual relationship with a student." 524 U.S. at 291. And, while grooming conduct may be a prelude to sexual harassment, such conduct of itself does not typically amount to harassment. *See Doe v. Madison Metro. Sch. Dist.*, No. 15-CV-570-BBC, 2017 WL 527892, at *5 (W.D. Wis. Feb. 9, 2017) ("To begin with, Title IX does not prohibit 'grooming,' it prohibits sexual harassment that is so pervasive or severe that it alters the conditions of a student's education."), *aff'd sub nom. Doe No. 55 v. Madison Metro. Sch. Dist.*, 897 F.3d 819 (7th Cir. 2018), *reh'g en banc granted, opinion vacated* (Oct. 11, 2018).[4]

Furthermore, while grooming conduct can take on various forms, some conduct may be more indicative of a risk of sexual harassment or abuse. As stated in *Madison Metro.*: "*Any* contact between an adult and a child could be grooming behavior, but that does not mean that all contact is sexual harassment under Title IX." *Id*. (discussing whether a hug could be grooming behavior). Here, based on Plaintiff's allegations, the school district only knew about alleged grooming conduct consisting of one-on-one interactions between the student and her teacher with one instance of Jensen walking in on them when they were behind closed doors. Plaintiff also appears to allege unspecified other instances when Jensen observed them spending time together behind closed doors. This case involves no other allegations of known alleged grooming conduct. The alleged grooming conduct in this case does not even raise any red flags that should have alerted Jensen or the district of sexual harassment or a substantial risk of sexual abuse. *See M.E. v. Alvin Indep. Sch.*

---

[4] To the Court's knowledge, the Seventh Circuit has not yet issued a new opinion en banc.

*Dist.*, 840 F. App'x 773, 776 (5th Cir. 2020) (per curiam) (recognizing in the context of summary judgment that "[t]here may have been . . . 'red flags' that should have alerted the district of a substantial risk that [a school resource officer] was sexually assaulting [the student]," but still finding no actual knowledge of such risk and thus dismissing Title IX claim against school district).

As reflected in public reports submitted by Plaintiff, there is a growing understanding of sexual grooming behavior and the trend is toward educating and training about such behavior and warning signs. *See* United States Government Accountability Office, *CHILD WELFARE: Federal Agencies Can Better Support State Efforts to Prevent and Respond to Sexual Abuse by School Personnel*, January 2014, GAO-14-42, available at https://www.gao.gov/assets/gao-14-42.pdf (last accessed July 29, 2021); U.S. Dept. of Educ., *A Training Guide for Administrators and Educators: Addressing Adult Sexual Misconduct in the School Setting*, March 2017, available at https://rems.ed.gov/docs/ASMTrainingGuide.pdf (last accessed July 29, 2021). The Court understands the trend and the concerns about grooming conduct or behavior. But Plaintiff has pointed to no case where a court has equated grooming conduct to sexual harassment, discrimination, or abuse itself. And the Court knows of no such case.

Still, the Court does not outright reject the possibility that there might be a case with factual allegations of grooming conduct which is the functionally equivalent of sexual discrimination prohibited by Title IX. In such a case, actual knowledge of the alleged grooming conduct would constitute actual knowledge of the sexual harassment without need for any reasonable inference. But this is not such a case. Here, actual knowledge of the alleged grooming conduct does not carry the day. Therefore, to survive the instant motion, such knowledge must create a reasonable inference that Jensen had actual knowledge required for a Title IX claim.

Because there are no factual allegations that Defendant actually knew of the sexual harassment of Plaintiff or of a substantial risk of sexual abuse, the question becomes whether there are enough factual allegations to reasonably infer such knowledge. In this case, the factual allegations are insufficient to even plausibly claim that Defendant should have known of the harassment, let alone actually knew of it. Based on the factual allegations, Defendant, through Jensen, knew of one-on-one interactions between Plaintiff and her teacher, including instances occurring behind closed doors. But there is no basis to reasonably infer actual knowledge of a substantial risk of abuse. Teachers like Trevino are a blight on the teaching profession and no student should be subjected to sexual abuse, harassment, or discrimination at the hands of any teacher. But it is too great a leap from the factual allegations here to reasonably infer actual knowledge of a substantial risk of abuse.

Even when a teacher's conduct is egregious, as it is here, Title IX requires actual notice to the school district to impose liability. And Plaintiff does not make enough factual allegations to state a Title IX claim that is plausible on its face. Nor does she make enough factual allegations to warrant a reasonable inference that Defendant had actual notice. And finally, her alleged facts are insufficient to show that discovery on the knowledge issue amounts to anything more than a fishing expedition. She has not alleged enough facts to raise a reasonable expectation that discovery will reveal evidence sufficient to state a Title IX claim. The Court has considered her limited access to crucial information regarding Defendant's actual knowledge but still finds her facts insufficient for her Title IX claim to survive dismissal under Rule 12(b)(6).

Plaintiff confuses misconduct in general, i.e., one-on-one interactions with a student behind closed doors, with actionable sexual harassment. The law simply does not equate the two. Title IX requires actual notice of sexual harassment, which may be satisfied by actual knowledge of a

substantial risk of abuse. But to have actual knowledge of a substantial risk of abuse requires more than Plaintiff has alleged here. Because Plaintiff has failed to plead enough facts regarding actual knowledge of Defendant, the Court has no need to address whether she has pled enough facts regarding the deliberate indifference element. The pleading deficiencies with respect to actual notice requires dismissal of Plaintiff's Title IX claim.

## V. LEAVE TO AMEND

Plaintiff seeks leave to amend her complaint should the Court find her current factual allegations insufficient. *See Resp*. at 9-10. She sets out four additional allegations that she would plead in such amendment. *Id*. at 9. Defendant objects to the Court considering the new allegations. *See Reply* at 5-6.

Defendant is correct that plaintiffs cannot bolster allegations of their complaints with new allegations stated in a response to a motion to dismiss. *See Calvin v. Harrington*, 3:19-CV-02294-G-BT, 2021 WL 932051, at *6 (N.D. Tex. Feb. 22, 2021) (recommendation of Mag. J.) *accepted by* 2021 WL 929103 (N.D. Tex. Mar. 11, 2021). But the Court may most certainly consider the new allegations when deciding whether it should grant Plaintiff leave to amend her complaint.

Plaintiff could have avoided any need for leave of court had she simply filed an amended complaint within twenty-one days of service of the motion. *See* Fed. R. Civ. P. 15(a)(1) (setting requirements for amending as a matter of course). When a party foregoes amending as a matter of course, the party may amend prior to trial "only with the opposing party's written consent" or leave of court, which should be freely given "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). Whether to grant leave under Rule 15(a)(2) is within the court's discretion. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 333 (5th Cir. 2012).

In some circumstances, when plaintiffs "simply declare the adequacy of their complaint and fail to take advantage of the opportunity to amend as a matter of right," they "are not entitled

to an opportunity to satisfy the pleading requirements." *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 984-85 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015). This is largely because by declaring the adequacy of their complaint they are indicating that they have stated their best case. *See Spiller v. City of Tex. City, Police Dept.*, 130 F.3d 162, 167 (5th Cir.1997) (relying on *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (discussing proposed amendment and concluding that it "must assume . . . that the plaintiff has pleaded his *best case*")); *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir.1994) (recognizing that allowing another pleading "would do nothing but prolong the inevitable").

Here, Plaintiff submits new facts that she intends to include in an amended complaint should the Court grant her leave. The Court, however, has considered each of the new factual allegations and finds that none of them cure the pleading deficiencies related to Defendant's actual knowledge of the sexual harassment or of a substantial risk of abuse. The only one that even relates to the knowledge element is an allegation that Jensen observed Trevino seek out Plaintiff and invite her for a walk alone while at an away-from school activity during her Eighth-grade year. *See Resp.* at 9. And while she alleges that they were "conspicuously absent" from the event, *see id.*, the facts provide no basis to reasonably infer that Jensen actually knew of any sexual harassment or of a substantial risk of sexual abuse.

Because Plaintiff has stated her best case under Title IX, the Court denies her request to amend her complaint to state new and additional factual allegations.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the *Motion to Dismiss* (ECF No. 6) filed by Defendant Northeast Independent School District. It also **DENIES** Plaintiff's request to amend

her complaint. By separate document, the Court will enter judgment for Defendant.

**IT is so ORDERED.**

**SIGNED this 30th day of July 2021.**

*[signature: Jason Pulliam]*

**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**
